■ In the Matter of the Claim of MAXINE CHOPIK, Respondent. CECILIA NEWMAN, Doing Business as MODELS SERVICE AGENCY, Appellant; THOMAS F. HARTNETT, as Commissioner of Labor, Respondent.—Levine, J. Appeal from a decision of the Unemployment Insurance Appeal Board, filed March 18, 1987, which ruled that claimant was entitled to receive unemployment insurance benefits.

Models Service Agency (hereinafter the agency) operates a modeling agency which interviews, hires and refers models to various clients for temporary assignments in the garment and fashion industry. The clients are generally retail manufactur-

ers in need of modeling services who call the agency with a specific modeling need. The agency represents approximately 450 models who generally find out about the agency through word of mouth. Those seeking modeling work are asked to fill out an application and provide a reference. The prospective model is interviewed, and her physical characteristics and prior experience are evaluated. The agency's owner then decides whether to accept the model or reject her. Models who sign with the agency are not under an exclusive contract and are free to accept other assignments. With respect to fees, the client and the agency generally set the rate of pay per hour for a particular model. If the proffered fee is unacceptable, the agency has the right to refuse to provide a model for that particular assignment. Following the completion of an assignment, the client and model sign a voucher form provided by the agency which the model takes back to the agency. The agency keeps track of all job assignments and takes responsibility for the collection and billing of fees from clients. Only after the agency is paid by the client will the agency pay the model after first deducting the agency's 10% commission. The agency does not deduct taxes or Social Security from these fees.

In July 1980, the agency accepted claimant's application for modeling work, even though her first assignment for the agency was not until March 1982. However, from March 4, 1983 to February 9, 1984, claimant worked with Laurence H. Kaye Furs, Inc., a fur retailer, where she modeled fur coats for prospective customers. Claimant was chosen from a group of models sent by the agency to interview for the job. During this assignment, claimant worked from 9:00 A.M. to 5:00 P.M., Monday through Friday, at a weekly salary of $300. Claimant reported each week to the agency where she was then paid for the week's work, minus the agency's commission. Claimant's work with the furrier ended under nondisqualifying conditions and apparently the agency had no further referrals for her. Claimant then applied for unemployment insurance benefits from Laurence H. Kaye Furs and was designated its employee by an initial determination that was subsequently overturned after an administrative hearing. The Administrative Law Judge found that Laurence H. Kaye Furs was not claimant's employer and that claimant was not an independent contractor. The matter was then remanded "for investigation and determination as to claimant's true employer". Thereafter, claimant was determined to be an employee of the agency and eligible for benefits. On further administrative review, how-

ever, this determination was overturned and claimant was classified as an independent contractor. The Unemployment Insurance Appeal Board disagreed with this ruling and found that an employer-employee relationship existed between the agency and claimant. The agency now appeals the Board's determination.

Initially, we find that the Board correctly held that claimant was not an independent contractor. She was not in business for herself, incorporated or clothed with any significant indicia of an independent contractor. Thus, the issue distills to whether there is substantial evidence to support the Board's finding that claimant was an employee of the agency. We conclude that such evidence exists. While it is true that the agency's clients controlled to some extent the times, places and appearances of the models, lack of control over these kinds of details does not preclude the finding of an employment relationship where, as here, professional services are being rendered (see, Matter of Affiliate Artists [Roberts], 132 AD2d 805, 806, lv denied 70 NY2d 611). The agency's reliance on Matter of Barnaba Photographers Corp. (263 App Div 915, affd 289 NY 587) is misplaced because the models in that case, unlike those in the instant case, were engaged with no degree of regularity or continuity or employed on a permanent or periodical basis.

Moreover, despite the agency's arguments otherwise, significant indicia of the agency's control over its models is demonstrated in the record. Evidence before the Board revealed that the agency selects which models it will represent, chooses which models to send to clients, generally establishes the models' fee after consultation with the client, requires the models to submit completed job vouchers and then directly pays the models their wages (see, Matter of Securities Research Servs. [Roberts], 122 AD2d 504, 506 [dissenting mem], affd on rearg 125 AD2d 816, lv denied 69 NY2d 610; Matter of Szymanski [Meyer—Roberts], 89 AD2d 691). Further, the agency will reject a fee offer from a client if it is unacceptable without consulting the models themselves. Any conflicts between the model and the client as to how many hours were worked are usually resolved by the agency in favor of the client. The agency receives all complaints from the client as to a model's performance and the agency's owner occasionally travels to monitor the model's performance. It is the agency which calls the model to tell her to stop working if a client decides to terminate her employment. In addition, the models generally call the agency if they cannot work because of

illness or personal reasons and the agency would call the client to determine if a replacement was needed *(see, Matter of Whyte [Good Care Nursing Agency—Roberts],* 132 AD2d 758, *lv denied* 70 NY2d 611). The agency also reserves to itself the right to not send a model out to a job if she does not look "right".

Given these substantial indications of control, it cannot be said that the Board's findings were irrational. Clearly, "[s]uch active employer direction and control of client contact, of the employee's wages, and of the billing and collection from clients is symptomatic of an employer-employee relationship" *(Matter of Gentile Nursing Servs. [Roberts],* 106 AD2d 763, 765 [dissenting mem], *revd on dissenting mem below* 65 NY2d 622). Although the agency correctly notes that there was also evidence in the record to support a contrary conclusion, the evidence of control was sufficient under the case law to support the Board's finding of an employer-employee relationship *(see, Matter of Affiliate Artists [Roberts], supra,* at 807; *see also, Matter of Kennison [Gussow—Hartnett],* 144 AD2d 162).

Decision affirmed, without costs. Kane, J. P., Casey, Weiss, Levine and Mercure, JJ., concur.